When you're ready, counsel. Good morning, Your Honors. Tariq Adlai on behalf of Edward Cha. Two points. One, after indicting Edward Cha for creating a false writing that contained a false statement, the government abandoned its false writing charge and sought a conviction for any writing that contained a false statement or, according to the verdict form, any false statement in any medium at any time. Two, the government's theory for justifying the admission of proper statements undermines the Sixth Amendment's requirement of meaningful adversarial testing at trial. If the threshold is just impeaching a witness or highlighting the absence of easily obtained corroboration, either the defense must remain mute or the government always gets to introduce the proper statements. Used this way, proper statements are a simple excuse to forego investigation developing compelling evidence beyond a reasonable doubt and avoid meaning adversarial testing by limiting defense counsel to minimal non-adversarial inquiry. Those are the two points I was going to focus on. So those are the two of the most compelling arguments in your view that you're raising on appeal. One is the constructive amendment and the other one is the use of the proper statements. I think there's several, but I have ten minutes and so I'm narrowing it down. Pick your battles. Exactly. So let's go to the first one first. Was there any evidence presented at trial that connected Mr. Cha to any writing other than the treatment notes specified in the indictment? Well, he was involved with all the, he was with all the, he was involved with all of the documents, all of the files, including the billing. And I'd like to focus the court for a moment also on the fact that it's not just a constructive amendment issue, but a jury instruction problem as well. The jury never addressed whether, the verdict form, it didn't have to address any writing whatsoever, any false statement. And its rebuttal case, the government's rebuttal or serve rebuttal case, was entirely Cha's statements in which they presented that he'd made false statements to the government. So there was no, the jury never had to find that there was a false writing involved. So in addition to the constructive amendment, I think equally importantly is the fact of whether the jury had to address this. Why do you think they need to find a false writing in the statute that doesn't contain that language? On the contrary, Your Honor, it says... False statements. Oh no, this was indicted under the false documents clause. And so the statute has two clauses. One is a false statement. The other is a false writing that contains a false entry or statement. And this is a problem of the government's own making. They could have charged this under any number of different statements. Were you trial counsel below? I assisted trial counsel. Okay. So let me explore your constructive amendment argument because, you know, we've got the record on appeal, but it's much easier when you're there in the heat of the trial to figure out how the evidence came in. In the indictment, this is how I understand your argument. In the indictment, the government identified a writing as purportedly containing false statements. And that writing identified in the indictment was false treatment notes. Correct. And so your theory, as I understand it, your argument is that, well, the indictment limited in that fashion, but the jury instruction opened it up, so now we don't know whether the jury found that the relevant writing was the falsified treatment notes or whether it's some other writings. Right? Correct. Did I understand your argument correctly? Yes. So that's why I'm asking you, was there evidence presented during the trial that may have connected Mr. Cha to any other writings? Because, frankly, if the only evidence presented at trial connected him solely to the treatment notes, then I don't see your argument really playing out in your favor because, while the jury instructions may have been broader, if there were no written treatment notes that he was involved in, then where's the constructive amendment problem? Your Honor, I think the bigger problem is the jury, putting aside the constructive amendment, the jury wasn't even asked to consider whether there was a false writing. And a false writing is a specifically, it's defined in the common law as an unauthorized, a forged writing. And that, I think, is the central point. There were no forged writings. There was no nothing, there was no false writing as defined in the common law. And I'd just like to use a simple example, which would be like a birth certificate. If the county issues it and it has false information about the name, the parent's name, the place or date of birth, that's not a false writing, even though it contains false information. On the other hand, if somebody is at their, at home and creates it from a false information, it's not an authorized document, it's not issued by who it's purported to be issued by, that's a false writing. And here, we don't have any false writings, because these are Dr. Pack's notes. The handwritten notes were his, the charts came from him, the typed notes were returned to him, he signed them every single page, 2,500 pages, and then he, Dr. Pack, turned those transcribed versions of his notes into Medicare. He endorsed them and authenticated them. So there is no false writing in this case. Putting aside, even if the jury was limited to just those, and only considered just those notes, they weren't false writings. And the jury wasn't even asked to consider if they qualified as a false writing, because they were allowed to convict for any statement at any time. The government has three reasons that they were transcribed, that they were falsified, and that they contain errors. I'm really running down on the clock. If any of those are hang-ups, and then I could explain why those don't transform these back into false writings, otherwise... I know your second point was the use of the proffer statements. Yes. I'm assuming this was a standard proffer session where the defendant was subpoenaed for a day letter, and it was limited to refuting or countering. And here, the district judge applied the wrong standard. She didn't ask whether there was a specific factual assertion that the government, that Cha had made, but generally opened it up for any kind of rebuttal, and that it was a general repository. And the case law is very clear, that one must look for a specific factual assertion, and refuting and countering is more than just... I'm sorry. The government didn't reserve for itself anything more than refuting or countering. Whatever shortcomings in the government's evidence, that is not just something that can be refuted or countered without a specific statement. And Cha made no specific statements. The government, I'm sorry, the Court's focus in deciding whether to admit the proffer statements was things like the jury shouldn't believe Mrs. Pack. She's a liar. That's a quote at ER 66. And that the defense characterized the testimony of Mrs. Pack as lying. Well, she wasn't. Didn't she? They characterized the testimony, part of it, that she didn't pay cash, whereas Mr. Chow said that he actually received cash from her? With regard to Ms. Choi, wasn't there also an attack on her that she was aware that your client didn't know that there was anything added to the treatment notes, where in fact he testified or his proffer said that he did know there were physical therapy exercises added to the treatment notes? Two things. One is with regard to Mrs. Pack, there was no dispute about cash. That wasn't the question. It was a question of whether it was all in cash, all lump sum, all up front. And that was denied. And that wasn't contradicted by the proffer statement. The proffer statement was there was, it came over time in increments. And the government produced, the government produced a check. They didn't offer it into evidence, the defense did. But the government produced a check confirming that it wasn't all cash. As to Ms. Choi, again, part of the problem here is the court used the wrong standard. Instead of looking at is there a specific factual assertion, the court just treated it as generalized rebuttal. Could you just help me? Where is the unfairness here? I'm not quite seeing it. What was done that you were unprepared to respond to or that was unfair or sharp tactics or whatever? Your Honor, I think the whole process of eliciting the proffer itself was done in a very unfair way. He was misadvised as to that he was not a target, that he was only a witness. He was advised, and because of that, he was represented by a civil attorney who had no criminal experience, who would have immediately referred him out to criminal counsel if she thought he was a target, and represented Ms. Choi as well as Mr. Cha. What's the evidence that he was a target at that time? I mean, you're essentially saying that the AUSA misrepresented her status. Is there any evidence of that? The civil investigator represented that Mr. Cha and his business was a target, and then the case agent who worked with the indicting attorney said Cha was a target. And when they showed up in the interview room, they treated him like a target. They were ready with documents to cross-examine him about those items. And it wasn't just explained to us. It was hard-grilling cross-examination. Well, how could he have been a target if the indictment was already returned on Ms. Lim and Dr. Pack prior to him being interviewed? The grand jury had already returned the indictment. Mr. Cha responded to a grand jury subpoena for records, right? That is correct. That is correct. And he gets a lawyer, and the government says you're not a target. Then the indictment comes down about two days after the lawyers have conversation. And then about the following month, I think, he comes in for the interview. Isn't he was a target at that point? Not just a witness? Well, there was no hearing, Your Honor. There was no hearing. I mean, that's another part of the problem. There was no hearing at which these facts could have been elaborated and clarified. Although there were specific allegations, the government, the government lawyer, who we allege misrepresented his target status, has never denied that, has never filed a declaration saying, no, no, no, when I said he was only a witness, that was my intention at the time. The case agent who worked with her said, no, Cha was a target. Well, there's nothing in the record to show you ever communicated that to the, at the time, the female U.S. attorney. She wasn't the one that tried the case, right? She went on maternity leave or something, and they reassigned it? That is correct. But they were working together. I mean, case agents don't just work out on their own. Well, but who controls what's presented to the grand jury, the case agent or the assistant U.S. attorney? I don't, I haven't been in an AUSA. I would assume that the AUSA controls what's presented. But that doesn't mean that the two are not working in tandem. And they would have communications about what's our target? What's our objective? Who are our targets? What's our goals? Well, is there anything in the record to show that, I think it's Agent Strong, that's the one you're talking about. Anything that he actually told Ms. Williams about him? We haven't had a hearing, Your Honor. So without a hearing, really. Our questioning is taking you over time. But I'll give you a couple of minutes to come back on rebuttal, and let's hear from the government. I appreciate that. Good morning, Your Honors. May it please the Court. Benjamin Lichtman for the United States. Let me begin with the indictment, just to clarify a point that was raised. The indictment actually charged the, under the false writing and document theory of the statute, it charged the patient files as the false writing or documents, and it charged the falsified treatment notes within those patient files as the false statements. And that's important because I think that makes clear that whatever evidence of other false statements in the patient files the defense may have been concerned about, they were not uncharged. They were within the patient files that were charged as the false documents. So now you're saying that the government isn't limited to falsified treatment notes because it mentioned patient files generally. So that opens it all up for the government? Well, I don't know that we need to reach that because, again, coming back to a point that I believe Your Honor was exploring with defendant, the evidence at trial, which I believe under the constructive amendment cases, is the key part of the analysis. It's not, that is to say, it's not enough. That's why I wanted to focus on that. Was there evidence presented of false writings that Mr. Chao was involved in beyond the falsified treatment notes? No. And that is to say that the government did not produce evidence that the defendant was responsible for or involved in other false writings, false statements. And the government did not argue that. And, in fact, to the contrary, and here I would just refer the Court back to pages 34 and 35 of our answering brief, the government took great pains to explain multiple times that the false treatment notes were the false statements. And so that was done multiple times in closing. Indeed, the entire closing was focused on reminding the jury of that. And, in fact, in rebuttal, the government went forward and clarified that other falsities that may have been associated with Dr. Pak's practice, such as claims that he had worked for certain numbers of, you know, 72 hours in one day or things of that nature, were not the false statements that the government was alleging the defendant made. So the government took great pains to explain that. But basically, the constructive amendment argument fails because the evidence at trial matched the indictment's allegations. With respect to the proffer, I think it's important first to respond to the very serious allegation of misrepresentation by the former AUSA here. The record does not suggest that the prosecutor was lying when she told the defendant that he was not a target at the time of the proffer agreement. And, in fact, the Court made factual findings on this. And here I'm referring to the order denying a motion for a new trial that said excerpts of record 50. And the government — excuse me, the Court found that, quote, the factual record does not support Shah's argument, close quote, that he was fraudulently induced. The fact of the matter is people come in for proffers. That is an investigative tool for the government. And in this case, Mr. Shah became a target after his proffer. And that's supported by the record because what you see is that on the same day, Sina Choi, the physical therapy assistant, who defendant asked to insert the false treatment notes into the patient files, she came in for a proffer as well on the same day. And based on her proffer, based on defendant's proffer, based on additional evidence that the government was then able to derivatively investigate and discover, later, in May 2012, approximately seven months after defendant's proffer, defendant was a target and was actually named in a first-degree proceeding. So you're saying the target at the time that this investigation was going on was Dr. Pak? Well, the investigation went on for quite a period of time. But to be clear, I believe the record reflects that Mr. Shah's proffer meeting on or about August 11th of 2011 was in the days following the first indictment in this case. And so the government was seeking to determine who was responsible, but it didn't know at that point. This is pretty unusual. At least I haven't seen it before. And normally these issues don't come up because presumably the AUSA and the agents are on the same page about who's a target, who's a witness. And sure, you know, during the investigation, you've got the biggest fish or fishes in this case as the targets, and then everybody else can be a witness because you're trying to find witnesses to shore up the trial. But what's unusual in this case is that there are some agents who made statements indicating that Mr. Shah was, I think one said he was on my radar, another one thought that he might have been a target. So can you talk to me about that record and whether, like, first of all, what is that record? And secondly, whether that's sufficient to trigger some type of an evidentiary hearing. Okay. Well, I think the record reflects that the investigator, the civil investigator, the court's referring to was investigator Salazar. And he certainly was investigating physical therapy, fraudulent physical therapy billing generally. And I think the record reflects that that was done using quantitative tools to identify sort of where these billings were coming from. So, but again, he was a civil investigator, and the fact that he was, you know, aware of defendant or the defendant as a biller was someone who he was aware had a high percentage of physical therapy billings, which I believe the record reflects, that doesn't make defendant a criminal target. That determination, as the court, one of your honors referred to earlier, is a determination for the AUSA. It is not for the case agent. And while it's true that in some cases case agents in AUSA see eye to eye on that, it is often the case that agencies wish us, wish for our office to treat someone as a target, and we disagree. Help me with the chronology for a minute. Who was indicted in the first indictment? Dr. Pock and Mary Lim. Okay. And this proffer was after that? Yes, Your Honor. I believe it was just in the days following that first indictment in August 2011. And they're talking to everybody else who was related to this office operation? Is that what you're saying? Yes. And the record was, excuse me, the investigation was somewhat complicated, as I view the record, by the fact that we did have language issues. So that's the documents that had Korean handwriting on them. And I think the record reflects, in terms of the sequence of the proffers, that the government was attempting to figure out, well, who was responsible for the falsities in these typed treatment notes. And so when you look at the sequence, you see Sina Choi in August 2011 and defendant coming for the same day in proffers. Sina Choi went first. In Sina Choi's proffer, she claimed that she had simply transcribed the notes word for word. And then in defendant's proffer, at first, defendant claimed that as well. And that was consistent with what Sina had said. At this point, I think the fair inference from the record is that the AUSA investigating this couldn't conclude whether it was Dr. Pak alone or someone else who had inserted this. And they continued to – my office continued to investigate this for several months. But on the basis of not only Sina Choi later flipping after her proffer and cooperating with the government and taking responsibility and saying that – pointing out the defendant had asked her to insert these notes, but also based on other evidence such as bank records and patient files that are listed at government's excerpt of record 427 – I believe that's in a footnote – on the basis of all that subsequent investigation, defendant later became a target. And with respect to the – When was he – when was he indicted? In May 2012 in the first superseding indictment. And when was the Pak indictment? The – well, just to be clear, Dr. Pak was also named in the additional count that was added in the first superseding indictment. The original indictment was in August 2011. And just briefly, I know I've used my time, but I want to mention with respect to the proffer statements being triggered that the court was very careful and the district court relied on the Rebbi decision precedent of this circuit. And I just want to direct the court's attention to page 407 of the Rebbi decision. That's 314F3-402, United States v. Rebbi at page 407. Because that makes clear that this circuit supports the – permits the admission of proffer statements or the triggering of the admission of proffer statements based on implications from questions in cross-examination. And I say that to respond to a point the defendant raised. Unless there are further questions, I'll submit. Thank you, counsel. Thank you. Thank you, counsel. Let's put two minutes on the clock. Thank you very much. Just a couple of quick points. First, I just want to reiterate the constructive – the issue is I think the primary issue for the court is going to be with the jury instructions, not just the constructive amendment, something the jury was not asked to find. And as I explained, I don't think they could have found that there was a false writing. The government's – the only reference to a writing that the government made during its closing argument was a simple reference, a quoting of the instruction at the beginning. Beyond that, they never focused the jury on writing. They just talked about falsehoods. As to the scope and sort of timing sequence, the government did a substantial amount of pre-indictment investigation. I don't think that it was purely new – just putting the trial together that they went to interview Mr. Cha and Sina Choi. As for the misrepresentation, as Judge Nguyen noted, it's an odd confluence that you have two agents, especially the case agent, on a different case than the assistant U.S. attorney. To respond to one of Judge Whalen's questions about Sina Choi, one of the things that the court, the district court, focused on with regard to Sina Choi wasn't general things that the government points out in their opposition brief, but was the testimony of Wendy Cho. Sina Choi made a specific reference that Mr. Cha told me to lie before going in to meet with the agents. That was a specific allegation. That was obviously a very devastating allegation. Wendy Cho was brought for the specific purpose of saying, I was there for the entire time that Edward Cha and Sina Choi were in the same room. I was at that place at the same time. There was no opportunity for Mr. Cha to have made that. He didn't leave the room. I was with him. That never happened. And the judge, the district court, said, well, we can introduce that because it's general. There was no specific factual assertion that was being contradicted. And simply with regard to Rebbi, I'd just like to note on 407 and 408, there's a footnote that says if the defense can't bring out things without triggering the proffer, that's a serious problem. And that's the problem we have in this case. All right. Thank you very much for your argument, both sides. The matter is submitted for decision by the court.
judges: Schroeder, Nguyen, Whelan